UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br><br>                Plaintiff,<br><br>v.<br><br>ALASKA AIRLINES, INC.,<br>                Defendant. | CASE NO.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## SUMMARY OF ACTION

Air Line Pilots Association, International ("ALPA") brings this action seeking injunctive, declaratory, and other appropriate relief against Alaska Airlines, Inc. ("Alaska" or the "Company") for violations of the Railway Labor Act ("RLA" or the "Act"), 45 U.S.C. §§ 151-188.

The collective bargaining agreement between ALPA and Alaska requires that the parties mutually agree on any change in the style, color and material of the pilot uniform prior to any change being instituted. Pilots must pay for and wear the uniform while on duty in passenger operations or face discipline otherwise. Accordingly, pilots are acutely interested in the uniform's color and style, especially with respect to how it is fitted, and the quality and durability of the uniform fabric as well as its overall appearance to the traveling public. Alaska management wants to change the pilot uniform as part of a Company-wide branding exercise. But it has not gained ALPA's agreement as to the style, color and material of the new uniform.

COMPLAINT - 1

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Nonetheless, Alaska has announced that by September 30, 2019, pilots must be fitted for and order the new uniform. It has undisputedly instituted a change to the pilot uniform without ALPA's agreement and lacks an even arguable contractual justification, and thereby triggered a major dispute under the Act.

Alaska's cavalier disregard with respect to pilot uniforms of its RLA duties to make and maintain agreements and to change them only in accord with the Act's dispute resolution process is but the latest instance of such a pattern and practice of conduct designed to undermine the statutorily required bargaining process and ALPA's standing as the exclusive representative of the Alaska pilots. Despite reaching an agreement in principle to do so, Alaska has refused to enter into a binding contractual commitment with respect to a program to treat and return to service pilots who develop substance abuse problems. The Company has also reached out to pilots directly, soliciting their views on a host of employment matters, and solicited pilot volunteers to address these issues with management, in disregard of ALPA's position as the exclusive bargaining representative of Alaska pilots and the Company's RLA obligation to negotiate with ALPA on such issues, not individual pilots of its choosing. Alaska has and continues to refuse to bargain in good faith. This Court should exercise its jurisdiction under the Act to order compliance with the RLA's bargaining obligations.

**PARTIES**

1. ALPA is an unincorporated association organized for the purposes and objectives of a labor union with headquarters at 1625 Massachusetts Avenue, N.W., Washington, D.C. 20036, and 7950 Jones Branch Drive, Suite 400S, McLean, Virginia 22102. ALPA is the exclusive collective bargaining representative of the Flight Deck Crew Members (the "Alaska pilots") employed by Alaska within the meaning of the RLA, 45 U.S.C. §§ 151 Sixth and 181. ALPA's functions as the exclusive collective bargaining representative of the Alaska pilots are coordinated by a governing body called the Alaska Master Executive Council ("Alaska MEC") with offices at 18000 International Boulevard, Seattle, Washington 98188. ALPA brings this

COMPLAINT - 2

action on behalf of itself and the Alaska pilots it represents.

2. Alaska is a "common carrier by air" engaged in the business of providing air services in interstate commerce within the meaning of the RLA, 45 U.S.C. § 181. The Company's headquarters are at 19300 International Boulevard, Seattle, Washington 98188, within this judicial district. Alaska also has a pilot and flight attendant crew base and maintains associated facilities within this judicial district at Seattle-Tacoma International Airport. As such the Company operates in and through this judicial district.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 because this action arises under the RLA, a federal statute regulating commerce.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), (c), and (d), and 45 U.S.C. § 153 First (p).

## FACTUAL BACKGROUND

**Alaska Pilot Uniforms**

5. Approximately one year ago, Alaska management advised ALPA that it intended to rebrand the airline to better distinguish it in the eyes of the traveling public. To that end, management said that it would change uniforms for all workgroups required to wear a uniform, including pilots. Subsequently, management said that it would roll-out the new uniforms across all workgroups during the first quarter of 2020. However, there is no contractual requirement necessitating simultaneous implementation of the uniforms across workgroups. This would also be a significant change specifically for pilots as the Alaska pilot uniform has been unchanged for over twenty-five (25) years.

6. Alaska pilot uniforms consist of a prescribed jacket, dress shirt, necktie, trousers or slacks, Company insignia that distinguishes Captains, the pilot in command of an aircraft, from First Officers, and certain accessories. Alaska requires pilots to wear a uniform at all times while on duty in passenger operations. Pilots are required to maintain the uniform and to replace

COMPLAINT - 3

18 WEST MERCER ST., STE. 400  BARNARD
SEATTLE, WASHINGTON 98119  IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132  LAVITT LLP

worn items as necessary at their expense.

7. Because they must wear the uniform at work and are responsible for its care and replacement, pilots are concerned (among other things) with: the style of the uniform, specifically, how it fits and whether it is comfortable to wear for entire duty periods; its relative cost and the durability of the fabric of the various uniform components (as pilots must pay to launder and maintain it); the color of the uniform because it affects the need for cleaning and maintenance; and, the overall image it conveys to ensure that pilot command authority and respect is enhanced to promote safety considerations.

**The Obligation to Gain ALPA's Agreement to the Style, Color and Material of a Changed Pilot Uniform**

8. Section 26.S ("Uniform Changes") of the ALPA-Alaska collective bargaining agreement ("Alaska CBA") states:

> The Company and the Association will mutually agree on any change in the style, color and material of the Pilots uniform prior to any change being instituted. No change in the basic uniform will take place without one (1) year's prior notice to all Pilots.

9. The Alaska CBA is in full force and effect. Section 26.S thus is a part of the statutory status quo which Alaska must maintain until and unless it is consensually revised through the major dispute processes of the RLA. The Alaska CBA becomes amendable pursuant to the RLA's major dispute provisions on March 31, 2020. Notice of intent to renegotiate the Alaska CBA must be provided by the parties no later than October 1, 2019.

**Alaska Ignores ALPA and Unilaterally Institutes a Changed Uniform**

10. Notwithstanding that the Alaska CBA requires prior negotiation and agreement with ALPA over changes to the pilot uniform (and there was none), in December 2018, the Company convened a pilot-specific uniform group in which policies and uniform needs were discussed. Then, in April 2019, Alaska conducted a direct survey of the pilot group on how it would change the existing uniform. That survey sought pilot views on elements of the proposed revised uniform. It additionally sought guidance on a revised personal appearance policy Alaska

COMPLAINT - 4

wished to inaugurate by modifying the Company's Flight Operations Manual ("FOM"). The FOM states Alaska policy on flight operations, including with respect to pilot deportment and behavior while on duty. Alaska may modify its FOM with approval of the Federal Aviation Administration. Management told ALPA that it intended, going forward, to more strictly apply the requirements of the FOM.

11. Alaska did not seek ALPA's approval with respect to its pilot focus group or direct polling of the ALPA-represented Alaska pilots. The December 2018 meeting and April 2019 polling shows it is management's intent to directly deal with the Alaska pilots exclusively represented by ALPA and circumvent its bargaining obligation with ALPA.

12. On April 12, 2019, the Alaska MEC's officers wrote to the Company and expressed a desire to commence in May 2019 early negotiations on a new pilot labor agreement with a stated goal of completing the negotiations by the March 31, 2020, amendable date. Thereafter the parties commenced negotiations.

13. On May 16, 2019, ALPA sent Alaska a set of initial negotiating items. Included as the first issue on that list is pilot uniforms. ALPA noted the requirements of Section 26.S of the Alaska CBA, advised that Alaska had yet to present a full uniform for ALPA to consider, and pointed out that there was no mutual agreement on changes to the style, color and material of the pilot uniform. At or about the same time the Company sent what it characterized as a contract opener to ALPA. The Company proposed no changes to Section 26 (the section including the provision with respect to changes in the uniform).

14. At a meeting on June 11, 2019, Alaska management presented pieces – but not all – of the proposed uniform to the Alaska MEC. In correspondence dated June 18, Alaska MEC Chairman Capt. William McQuillen raised certain questions about the proposed changes, including with respect to the durability and wear characteristics of the fabric. One week later on June 25, the Company proposed a modification of Section 26.S of the Alaska CBA which would delete the requirement of mutual agreement with ALPA on changes to the uniform as well as the notice requirement.

COMPLAINT - 5

15.  On June 26, 2019, ALPA presented the Company with a framework to resolve the outstanding issues with the uniform. Alaska has yet to respond to that proposal.

16.  On July 22, 2019 with no mutual agreement on the uniform, the Company e-mailed all Alaska pilots instructing them to get fitted for the new uniform with delivery of it to follow soon afterward. Alaska directed pilots to do this by August 31. Management in the same communication also encouraged pilots to order the uniform. ALPA responded to the pilot group the next day (July 23) noting that there was no agreement with respect to the uniform and that Alaska was wrongly treating Section 26.S's requirement that there be mutual agreement as something it could simply choose to ignore.

17.  Later that day, management responded to the pilot group. Alaska System Chief Pilot Capt. Scott Day acknowledged that ordering the uniforms could occur only after agreement was reached with ALPA under Section 26.S. He said that the July 22 e-mail was a mistake and that it was not meant to be sent to the pilot group.

18.  On August 9, 2019, Capt. McQuillen wrote to Capt. John Ladner, Alaska's Vice President of Flight Operations. Capt. McQuillen noted Alaska's failure to respond to the June 26 ALPA proposal. Notwithstanding that refusal to engage, Capt. McQuillen advised that ALPA would present a comprehensive proposal on the uniform issue at a negotiating session scheduled for September.

19.  Later that same day (August 9), Capt. Ladner sent an e-mail to all Alaska pilots stating that "all pilots must order their new uniform no later than September 30, 2019." Capt. Ladner advised that Alaska had sent its vendor its plan to purchase uniforms earlier that day, i.e., August 9, and that pilots had to meet the September 30 deadline if the Company were to have all workgroups wearing the new uniform in early 2020. He emphasized that having a cohesive look among all Alaska employees interacting with the traveling public was a key part of the Company's overall business strategy.

20.  Despite the Company failing to respond to ALPA's June 26, 2019, framework for resolving the outstanding issues with the uniform, Alaska MEC Chairman Will McQuillen again

COMPLAINT - 6

18 WEST MERCER ST., STE. 400   BARNARD
SEATTLE, WASHINGTON 98119   IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132   LAVITT LLP

reached out to the Company in an attempt to offer a solution. On August 23, 2019, Capt. McQuillen reiterated that ALPA "has and continues to be willing to resolve remaining uniform issues." He then outlined ALPA's remaining style, color and material concerns and proposed a comprehensive letter of agreement that detailed terms on pilot uniform changes that would be acceptable to the pilots. Specifically, Capt. McQuillen proposed a letter of agreement related to pilot uniform changes that covered several issues, including shoes and hats; shirt color and fit; color matching on different parts of the uniform; funding to guard against material durability concerns; lanyards; and procedural points for implementing and continuing these commitments through the current and successor contract.

21. The Company has not responded to that proposal.

22. Instead, on September 4, 2019, Capt. Ladner communicated to ALPA and the Pilot group that the Company was not amenable to a number of ALPA's proposed solutions for reaching mutual agreement on the uniforms. While admitting that mutual agreement had not been achieved, Capt. Ladner went on to state that the Company was moving forward with the new uniform regardless. Ladner additionally reiterated that the pilots needed to order the uniforms by the September 30, 2019 deadline.

23. By directing pilots to order new uniforms in the absence of ALPA's agreement, Alaska has – beyond dispute – unilaterally implemented a changed pilot uniform. Its decision to do so can in no way be justified under any interpretation of the Alaska CBA.

**Alaska Polls its Pilots and Solicits Volunteers to Help it Address Employment Issues**

24. In addition to the December 2018 uniform focus group and April 2019 survey on pilot uniforms, in June 2019, Alaska management polled its flight operations department – of whom 94% are pilots – on a host of employment related issues. Management asked about compensation and scheduling, among other things, which are central issues in collective bargaining. After completing the survey, on August 29, 2019, Vice President of Flight Operations Captain John Ladner shared details of the poll with the pilot group. He also solicited "volunteers from across the division to be on an action-planning team where we meet to identify

COMPLAINT - 7

18 WEST MERCER ST., STE. 400  BARNARD
SEATTLE, WASHINGTON 98119  IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132  LAVITT LLP

actions in some of these focus areas" such as compensation where pilots expressed the view that pay rates were below market. Capt. Ladner instructed pilots "interested in being involved in the action planning process" to contact him or their respective base chief pilot. In creating an "action-planning team" to identify a course of action to address employment concerns of Alaska pilots, management would circumvent ALPA, the legal representative of the pilot group with whom it has the duty to negotiate and reach agreement on compensation and other terms of employment.

**Alaska Negotiates Then Refuses to Enter into an Industry-Standard HIMS Program Agreement**

25. Alaska has also expressed its disdain for the collective bargaining process in how it has refused to implement a program for the identification, treatment and return to service of pilots with substance abuse issues. The Human Intervention Motivation Study, or HIMS, is a medical research program spearheaded by ALPA and funded by the federal government, and it is designed to effectively treat the disease of chemical dependency in pilot populations in order to enhance safety for the traveling public while saving lives and careers. Trained managers and peer pilots interact to identify and, in many cases, conduct an intervention to direct the troubled individual to a substance abuse professional for a diagnostic evaluation. If deemed medically necessary, treatment is then initiated. Following successful treatment and comprehensive continuing care, the pilot is eligible to seek FAA medical re-certification.

26. Over the past thirty years, HIMS programs have become commonplace in the airline industry. Over 4,500 pilots have been successfully rehabilitated and returned to their careers through HIMS. Almost every major passenger and cargo airline has collectively-bargained HIMS programs. Alaska has been an outlier.

27. For three years, ALPA has worked with Alaska to develop and codify a HIMS program into a Letter of Agreement ("LOA") ancillary to the Alaska CBA. On or about June 7, 2019, the parties reached a tentative agreement on a HIMS program LOA. That tentative agreement was, on information and belief, submitted to Alaska's chief executive Brad Tilden.

COMPLAINT - 8

18 WEST MERCER ST., STE. 400   BARNARD
SEATTLE, WASHINGTON 98119   IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132   LAVITT LLP

On August 2, 2019, the Company refused to agree to a HIMS LOA. Instead, Alaska said that it would unilaterally incorporate the HIMS program agreed to with ALPA into its FOM—a document that is not negotiated with ALPA. ALPA has objected to this because it effectively limits future collective bargaining over the terms of the HIMS program. Alaska may also modify the HIMS program in its FOM as it sees fit (subject to approval of the FAA) without consulting or bargaining with ALPA over the revisions. The Company has refused to make an agreement with ALPA despite its RLA obligation to do so, especially where, as here, it agrees with the terms of the proposal.

### COUNT I
### (VIOLATION OF RLA STATUS QUO OBLIGATIONS)

28. ALPA realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 27 above as if fully set forth herein.

29. Alaska's implementation of a changed pilot uniform unilaterally alters terms and conditions of employment of ALPA-represented Alaska pilots in a manner nowhere justified by the Alaska CBA or the RLA.

30. Alaska is obligated under Section 2 First of the RLA, 45 U.S.C. § 152 First, to exert every reasonable effort to make and maintain agreements, and under Sections 2 Seventh and 6, 45 U.S.C. §§ 152 Seventh and 156, to exhaust the RLA's mandatory bargaining process before unilaterally changing rates of pay, rules and working conditions. Alaska neither exerted every reasonable effort to make and maintain its agreement with ALPA, nor exhausted the mandatory bargaining process, prior to unilaterally changing the pilot uniform. By its course of unilateral conduct described above, Alaska has violated the requirements of Section 2 First and Seventh and Section 6 of the RLA, 45 U.S.C. §§ 152 First and Seventh, 156.

### COUNT II
### (VIOLATION OF RLA GOOD FAITH BARGAINING OBLIGATIONS)

31. ALPA realleges and incorporates by reference each and every allegation

COMPLAINT - 9

18 WEST MERCER ST., STE. 400   BARNARD
SEATTLE, WASHINGTON 98119   IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132   LAVITT LLP

contained in Paragraphs 1 through 30 above as if fully set forth herein.

32. Alaska is obligated under Section 2 First, Second, Third and Fourth, of the RLA, 45 U.S.C. § 152 First, Second, Third, Fourth, to treat, confer, and bargain exclusively and in good faith with ALPA with regard to rates of pay, rules, and working conditions for all employees in the class or craft of Alaska pilots represented by ALPA and with regard to all disputes between Alaska and its pilots, as represented by ALPA. Alaska is further obligated under these statutory provisions to make every reasonable effort to make agreements with ALPA concerning rates of pay, rules, and working conditions, to maintain such agreements, and to consider expeditiously and settle all disputes between Alaska and its pilots, as represented by ALPA.

33. Alaska, by its course of conduct described above, has failed and refused to treat, confer, and bargain exclusively and in good faith with ALPA, to make every reasonable effort to make and maintain agreements with ALPA or otherwise to negotiate in good faith with ALPA, and to make every reasonable effort to consider and settle all disputes with regard to rates of pay, rules, and working conditions of Alaska pilots for whom ALPA is the exclusive bargaining representative under the RLA. This course of bad faith conduct evidences that Alaska has no sincere intent to reach an agreement with ALPA and is in violation of the obligations imposed on Alaska by Section 2 First, Second, Third, and Fourth of the RLA, 45 U.S.C. § 152 First, Second, Third, and Fourth.

34. Alaska's course of conduct, as described above, constitutes a failure and refusal to bargain in good faith with ALPA concerning rates of pay, rules, and working conditions, in violation of Alaska's statutory obligations under Section 2 First of the RLA, 45 U.S.C. § 152 First.

**APPROPRIATENESS OF EQUITABLE RELIEF**

35. By the conduct described above, Alaska has caused, and is continuing to cause, irreparable injury to ALPA and the Alaska pilots it represents. Alaska will continue to engage in

COMPLAINT - 10

18 WEST MERCER ST., STE. 400  BARNARD
SEATTLE, WASHINGTON 98119  IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132  LAVITT LLP

this unlawful course of conduct unless enjoined.

36. ALPA has fully complied with all obligations under the Alaska CBA and the RLA.

37. ALPA has no adequate remedy at law.

### PRAYER FOR RELIEF

*WHEREFORE*, ALPA respectfully requests that this Court issue the following relief:

1. Judgment:

(a) Enjoining, ordering, directing, and requiring Alaska and its directors, officers, agents, and employees, to refrain from implementing a new pilot uniform until or unless there has been mutual agreement with ALPA as to the style, color and material of the pilot uniform, and

(b) Enjoining, ordering, directing, and requiring Alaska and its directors, officers, agents, and employees, to recognize and treat exclusively with ALPA as the collective bargaining representative for Alaska pilots, to cease direct dealing with Alaska pilots on terms and conditions of employment, to reduce to writing a letter of agreement reflecting the parties agreement with respect to a HIMS program, and to make every reasonable good-faith effort to bargain with, make and maintain agreements, and settle all disputes with ALPA with respect to the rates of pay, rules, and working conditions of all Alaska pilots.

2. A judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the rights of the parties.

3. A judgment awarding additional relief, as determined by the Court, including monetary relief, as may be appropriate to fully remedy the violations of the RLA by Alaska and its infringement of the rights of the Alaska pilots, as represented by ALPA.

4. Such other and further relief as this Court may deem appropriate, including reasonable attorneys' fees and the costs ALPA has incurred in bringing this proceeding pursuant

COMPLAINT - 11

to Section 3 First (p) of the RLA, 45 U.S.C. § 153 First (p).

RESPECTFULLY SUBMITTED this 6th day of September, 2019.

s/Darin M. Dalmat
Darin M. Dalmat, WSBA No. 51384
s/Melissa Greenberg
Melissa Greenberg, WSBA No. 54132
BARNARD IGLITZIN & LAVITT LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
(206) 257-6003
(206) 257-6038
*dalmat@workerlaw.com*
*greenberg@workerlaw.com*

s/Marcus Migliore
Marcus Migliore, DC Bar No. 411674*
Air Line Pilots Association, International
Legal Department
1625 Massachusetts Avenue NW, 8th Floor
Washington, DC 20036
(202) 979-4054
*marcus.magliore@alpa.org*

s/Thomas N. Ciantra
Thomas N. Ciantra, DC Bar No. 92671*
Air Line Pilots Association, International
Legal Department
7950 Jones Branch Drive, Suite 400S
McLean, VA 22102
(703) 481-2468
*thomas.ciantra@alpa.org*

*\*Pro Hac Vice Application Pending*

COMPLAINT - 12

18 WEST MERCER ST., STE. 400   BARNARD
SEATTLE, WASHINGTON 98119   IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132   LAVITT LLP